UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EKATERINA OSSIPOVA, *on behalf of herself and all others similarly situated*,

                                  Plaintiff,

                        -against-

PIONEER CREDIT RECOVERY, INC., and
JOHN DOES 1-25,

                                 Defendants.
-----------------------------------------------------------------X

1:18-cv-11015-GHW

MEMORANDUM OPINION
AND ORDER

**GREGORY H. WOODS**, United States District Judge:

      After Plaintiff Ekaterina Ossipova defaulted on her student loan, she received a letter from Defendant Pioneer Credit Recovery, Inc. ("Pioneer") stating that she owed them collection costs on top of the unpaid balance of her loan. She sued Pioneer, alleging that the collection letters she and others received from Defendant violate various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), because they misleadingly included post-default collection costs as part of the balance currently due, even though these costs had not yet been incurred. However, because the collection letter does not contain any false, misleading, or deceptive representations, Plaintiff's claim that it infringed the FDCPA lacks merit.

## I. BACKGROUND

      In 2008, Plaintiff applied for a student loan from the U.S. Department of Education ("ED") on her daughter's behalf. Complaint, Dkt. No. 1 ("Compl."), at ¶ 22. The loan is governed by a Master Promissory Note (the "MPN"), which contains the following pertinent provisions:

> **Promise to Pay**
> . . . If I fail to make any payment on any loan made under this MPN when due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

\* \* \*

> **Late Charges and Collection Costs**
> The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after the date it becomes due, and (ii) any other charges and fees that are permitted by the Act [Higher Education Act of 1965 and applicable ED regulations] for the collection of my loan(s). If I default on any loan(s), I will pay reasonable collection fees and costs, plus court costs and attorney fees.
>
> * * *
>
> **Consequences of Default**—Default is defined in detail in my MPN. If I default, the entire unpaid balance and collection fees on the applicable loan(s) will become immediately due and payable. Failure to repay any loan made under this MPN may result in any or all of the following: . . . Collection charges (including attorney fees) being assessed against me, . . .

*Id.* at ¶¶ 23, 63; Memorandum in Support of Motion to Dismiss, Dkt. No. 26 ("Def.'s Mem."), at 1 & Ex. 1, at ECF pp. 2, 4, 9.

After Plaintiff defaulted on the student loan, ED referred it to Defendant Pioneer for collection. Compl. ¶ 28; Memorandum in Opposition to Motion to Dismiss, Dkt. No. 28 ("Pl.'s Mem."), at 1-4. Attempting to collect on that debt, Pioneer mailed Plaintiff a letter dated June 22, 2018, itemizing Plaintiff's outstanding balance as follows:

| PRINCIPAL BAL | INTEREST |
|---|---|
| $63,108.56 | $15,860.30 |
| **COLLECTION CHARGE** | **CURRENT BALANCE** |
| $19,221.03 | $98,189.89 |

. . .

| Creditor | Principal | Int Rate | Interest | Collection Charge |
|---|---|---|---|---|
| U.S. Department of Education | $33,100.32 | 8.5% | $8,317.62 | $10,081.18 |
| U.S. Department of Education | $30,008.24 | 8.5% | $7,542.46 | $9,139.85 |

Compl. ¶¶ 29, 31-33 & Ex. A. This letter also stated that "[a]s you were previously notified, Pioneer Credit Recovery, Inc. has been assigned to collect the above mentioned debt. . . . As of the date of this letter, the balance shown is owed." *Id.* at Ex. A. Essentially, Pioneer's letter asserted that as of June 22, 2018, Plaintiff owed a total of $98,189.89, of which $19,221.03 comprised a "Collection Charge." *Id.* at ¶ 37 & Ex. A. Plaintiff did not pay any of the outstanding debt. *Id.* at ¶¶ 38-39. Instead, she sued Pioneer on November 26, 2018, alleging that Pioneer had violated the FDCPA.

The gravamen of Plaintiff's complaint is that Pioneer's initial debt collection letter falsely represented that the $19,221.03 collection fee was due at the time the letter was sent *Id.* at ¶¶ 42, 52. These collection charges, Plaintiff argues, "represent[ed] the contingency fee agreement between [Pioneer] and [ED] rather than a pre-paid, flat fee" that Plaintiff must pay Pioneer. *Id.* at ¶ 40. That is, Plaintiff alleges that the $19,221.03 fee was an amount Pioneer could permissibly charge ED for the collection of Plaintiff's outstanding debt (and which was contingent upon Pioneer doing so), but which could not be passed on to Plaintiff until ED incurred this fee. *See* Pl.'s Mem. at 10-14; Compl. ¶¶ 40-45. Further, Plaintiff argues that because these charges were contingent upon Pioneer collecting on Ossipova's outstanding debt; if (or when) any collection costs were due, Pioneer would have to calculate the amount she owed based on the percentage of her debt Pioneer actually collected, rather than the total amount of debt ED referred to Pioneer for collection. Compl. at ¶ 57. But when Plaintiff received Pioneer's letter, Pioneer had not billed, charged, or been paid $19,221.03 by ED, nor had Pioneer filed an action in any court or been awarded the collection costs of Plaintiff's underlying debt. *Id.* at ¶¶ 40-47. Essentially, while Plaintiff does not dispute that she would be obligated to pay collection fees at some point in the future, she contends that no such fees could have been due when she received this initial collection letter, as Pioneer had not yet collected any debt from Plaintiff or incurred any expense in attempting to do so. *Id.* at ¶¶ 39-47.

Accordingly, Plaintiff alleges that Pioneer's letter violated various provisions of the FDCPA, including: (1) section 1692e, in that it was false and misleading for Pioneer to include the $19,221.03 collection charge she did not yet owe as part of the current balance due in its June 22, 2018 collection letter; and (2) section 1692f, in that this false and misleading representation constituted the use of an unfair or unconscionable means to collect or attempt to collect an amount not expressly authorized by the MPN. *Id.* at ¶¶ 54-65. Plaintiff also asserts that Pioneer sent similar collection letters to other consumers in New York County who paid these collection charges that

were not due and owing. *Id.* at ¶¶ 38, 48-49. Pioneer now moves to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. Nos. 25-27, 30.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations [in the complaint] as true and draw[] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). To avoid dismissal, a complaint must allege "sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Courts follow a "two-pronged approach" in determining plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (alterations omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Deciding whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

While the Court must accept material allegations in a complaint as true, it need not accept conclusory allegations. *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). Although a court is normally limited to the contents of the complaint in considering a motion to dismiss pursuant to Rule 12(b)(6), documents other than the complaint may permissibly be

considered in certain circumstances, such as when they are either attached to the complaint or incorporated into it by reference and integral to its allegations. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Ackerman v. Local Union 363, Int'l Bhd. of Elec. Workers*, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006) ("The classic examples of documents that may be considered on a motion to dismiss even though the plaintiff does not physically attach them to the complaint are the contracts that underlie the claims in suit . . . ."). It is also well established that "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

### III. DISCUSSION

The FDCPA is a consumer protection statute, enacted by Congress to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress was spurred by "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which was a "widespread and serious national problem." 15 U.S.C. § 1692(a); *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017). Given this history, courts have determined that the terms of the FDCPA "must be construed in liberal fashion" to effectuate "the underlying Congressional purpose." *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (quotation omitted).

"To state a claim under the FDCPA, a plaintiff must show (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945 (KMK), 2018 WL 1605574, at *10 (S.D.N.Y. Mar. 29, 2018); *see also, e.g., Coburn v. P.N. Fin.*, No. 13-cv-1006 (ADS) (SIL), 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015) (same). "[A] single violation of the FDCPA is sufficient to

5

impose liability." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010). Additionally, "[d]ebt collectors that violate the FDCPA are strictly liable, meaning that 'a consumer need not show intentional conduct by the debt collector to be entitled to damages.'" *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)).

Plaintiff alleges violations of two specific sections of the FDCPA: section 1692e, which prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," and section 1692f, which proscribes the use of "unfair or unconscionable means to collect or attempt to collect any debt." *See also Arias*, 875 F.3d at 135-36 ("Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen. Section 1692f, meanwhile, is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive."). Even though they target different types of misconduct, sections 1692e and 1692f are "broad, potentially overlapping, and are not mutually exclusive," meaning that the same conduct by a debt collector can potentially violate both sections at once. *Id.* (quotation omitted).

Because the thrust of Plaintiff's complaint is that Pioneer's collection letter falsely represented that certain collection fees were currently due even though those fees had not yet been incurred, the question of whether the letter infringed section 1692e is of primary importance, given that the alleged violation of 1692f flows from and necessarily depends on whether any representations in Pioneer's letter were, in fact, false and misleading. That is to say, if the letter contained representations that were false and misleading in contravention of 1692e, then it follows that the letter also constituted the use of unfair or unconscionable means to collect or attempt to collect on a debt, contrary to 1692f. Conversely, if there was nothing false and misleading in the letter, the complaint alleges nothing else unfair or unconscionable about it. "Whether a collection letter is 'false, deceptive, or misleading' under the FDCPA is determined from the perspective of the objective 'least sophisticated consumer.' Under this standard, 'collection notices can be deceptive if

6

they are open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Easterling*, 692 F.3d at 233 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

In moving for dismissal pursuant to Rule 12(b)(6), Pioneer does not dispute that Plaintiff has adequately pleaded that she has been the object of collection activity arising from consumer debt and that Pioneer is a debt collector as defined by the FDCPA. Rather, Pioneer contends that as a matter of law, Plaintiff has failed to adequately allege that it engaged in an act or omission prohibited by the FDCPA, arguing that nothing in their letter was false, misleading, or unauthorized by the MPN governing Plaintiff's loan.

### A. Pioneer's June 22, 2018 collection letter does not contain any false or misleading representations.

Plaintiff asserts that Pioneer's inclusion of the $19,221.03 collection charge as part of the current balance due in its June 22, 2018 letter was false, deceptive, and misleading, as she contends that no such fee could yet have been due because Pioneer had not collected any debt from her or incurred any expense in attempting to do so. Pioneer disputes this, arguing that the Higher Education Act of 1965 (the "HEA") which expressly governs Plaintiff's MPN does not tie assessment of collection charges to the amount of debt actually collected or to the costs incurred in the collection process. Def.'s Mem. at 2. Rather, Pioneer asserts that the HEA merely mandates the assessment of "reasonable" collection costs when a borrower defaults, and that because HEA's implementing regulations and ED's procedure manual allow for collection charges of up to 24.34% of the outstanding principal and interest for loans placed with collection agencies, any collection charges not exceeding that amount are "reasonable" as a matter of law. *Id.* at 3-4, 8-10. Furthermore, Pioneer argues that because the MPN setting forth the agreed-upon terms of Plaintiff's loan expressly provides that collection costs are "immediately due and payable" upon default, she was obliged to pay these "reasonable" collection costs immediately upon her default. *Id.* at 10-11. Thus, Pioneer contends, it was neither false, deceptive, or misleading to include the

$19,221.03 collection charge in the current balance listed in its June 22, 2018 initial collection letter, nor was it an attempt to collect fees from Plaintiff that were unauthorized by the MPN governing the loan. *Id.* at 11-13.

The terms of the MPN governing Plaintiff's student loan provide that, if she defaulted, she would be obligated to pay "reasonable collection fees and costs" which would become "immediately due and payable" upon her default. *Id.*, Ex. 1 at ECF pp. 4, 9. Plaintiff also agreed in the MPN that ED would be permitted to collect from her "any other charges and fees that are permitted by the Act for the collection of my loan(s)." *Id.*, Ex. 1 at ECF p. 4 ("[T]he Act" is specified in the MPN to refer to "the Higher Education Act of 1965 . . . and applicable U.S. Department of Education regulations."). Section 484(a) of the HEA, as amended, provides that "a borrower who has defaulted on a [student] loan shall be required to pay . . . reasonable collection costs." 20 U.S.C. § 1091a(b)(1).

Although the HEA is silent as to what exactly constitutes "reasonable collection costs," the Department of Education has issued regulations interpreting this term. These regulations provide, in pertinent part:

> Collection charges. Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim. These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs. [Subject to exceptions not applicable here], the amount charged a borrower must equal the lesser of—
>
> > (i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or
> >
> > (ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.

34 C.F.R. § 682.410(b)(2). 34 C.F.R. § 30.60(b) in turn provides that "if the Secretary uses a collection agency to collect a debt on a contingent fee basis, the Secretary charges the debtor, and collects through the agency, an amount sufficient to recover—(1) The entire amount of

8

the debt; and (2) The amount that the Secretary is required to pay the agency for its collection services." The regulation then sets forth a formula designed to estimate the average cost of student loan collection activities undertaken by private collection agencies, *see* 34 C.F.R. § 30.60(c)-(d), which was "adopted by [ED] as a make whole approach applied to collect the costs incurred by guarantors across the entire portfolio of defaulted loans, as opposed to attempting to calculate the actual collection costs incurred with respect to each loan." *United States v. Vilus*, 419 F. Supp. 2d 293, 298 n.3 (E.D.N.Y. 2005) (quotation omitted); *see also* Doug Rendleman & Scott Weingart, *Collection of Student Loans: A Critical Examination*, 20 Wash. & Lee J. Civil Rts. & Soc. Just. 215, 241-42 (2014). Based on this formula, ED regulations currently permit private collection agencies like Pioneer to assess flat rate collection costs of up to 24.34% of the outstanding principal and interest of defaulted student loans placed with them for collection. *See* U.S. Dep't of Educ., *PCA Procedures Manual: 2009 ED Collections Contract* 22-23 (2009), https://www.studentloanborrowerassistance.org/wp-content/uploads/2013/05/2009-pca-procedures.pdf.

Pioneer indicated in their June 22, 2018 letter to Plaintiff after her default that her outstanding principal and interest totaled $78,968.86, and that the associated collection charge was $19,221.03—exactly 24.34% of $78,968.86.[1] Given this, the Court finds it impossible to reconcile

---

[1] Collection costs are reasonable as a matter of law so long as they comport with the ED regulations interpreting the HEA's "reasonable collection costs" language. Where a court is asked to evaluate an agency's interpretation of ambiguity in a statute it administers, "'the question . . . is whether the agency's answer is based on a permissible construction of the statute' at issue." *Catskill Mts. Chptr. Of Trout Unlimited, Inc. v. United States EPA*, 846 F.3d 492, 507 (2d Cir. 2017) (quoting *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 (1984)). A court defers to an agency's interpretation "so long as it is supported by a reasoned explanation, and . . . is a reasonable policy choice for the agency to make." *Id.* (quotation omitted). The Court notes that the regulations at issue here were promulgated pursuant to notice-and-comment rulemaking in which ED explained their reasoning and responded to concerns from commenters, and ED's stated rationale has been consistently found reasonable and well-supported when scrutinized by courts in the years since. *See, e.g., Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 650-51 (7th Cir. 2015); *Vilus*, 419 F. Supp. 2d at 297-300 & nn. 2-4; *In re Kennedy*, 568 B.R. 367, 373-78 (D. Kan. 2017); *Educ. Credit Mgmt. Corp. v. Barnes*, 318 B.R. 482, 487-92

the conclusory allegations in Plaintiff's complaint that she did not owe the collection costs identified in Pioneer's letter at the time she received it with the provisions of the MPN, the HEA, and ED regulations—which are incorporated by reference into her complaint—and which together belie Plaintiff's allegations. The agreed-upon terms of the MPN obligated Plaintiff to pay "reasonable collection fees and costs" that would become "immediately due and payable" upon her default and which would be governed by the HEA and applicable ED regulations. As a result, the Court concludes that Pioneer's inclusion of the $19,221.03 collection charge in its June 22, 2018 letter was neither false, deceptive, or misleading, nor did it constitute the use of unfair or unconscionable means to collect or attempt to collect on a debt. *See Beauvoir v. Israel*, 794 F.3d 244, 248 & n.4 (2d Cir. 2015) (affirming dismissal of complaint whose conclusory allegations were contradicted by facts that judicial notice could properly be taken of, which were contained in documents attached to or incorporated by reference in the complaint).

### B. There is no ambiguity in the MPN's terms.

Plaintiff alternatively argues that dismissal should be precluded because the terms of the MPN governing her loan are not clear about when collection charges would become due, implying that Pioneer's inclusion of the charges in the collection letter may have nevertheless run afoul of the FDCPA's proscription of false, deceptive, or misleading representations because Plaintiff supposedly had "never agreed, or at least it is ambiguous, as to when the 'collection costs' / 'collection charges' were due." Pl.'s Mem. at 5-6, 10. Plaintiff bases this argument on the fact that collection charges are discussed differently in two separate provisions of the MPN. Namely, the "Late Charges and Collection Costs" provision in which Plaintiff agreed to "pay reasonable

---

(S.D. Ind. 2004), *aff'd sub nom. Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796 (7th Cir. 2006); *see also Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 59 (2d Cir. 2004) ("[F]ormal adjudications and interpretations promulgated by an agency pursuant to notice-and-comment rulemaking are generally accorded *Chevron* deference."). Because the agreed-upon terms of Plaintiff's MPN allow ED to collect "any other charges and fees that are permitted by the Act [defined as the HEA and applicable ED regulations]," the Court need not make any finding that these regulations deserve *Chevron* deference. Def.'s Mem., Ex. 1 at ECF p. 4.

10

collection fees and costs" upon default, does not provide a specified time period by which Plaintiff must pay those costs, whereas the later "Consequences of Default" provision provides that "[i]f I default, the entire unpaid balance and collection fees . . . will become immediately due and payable." *Id.* at 5-6. Thus, Plaintiff asserts that the MPN governing her loan is "susceptible to more than one meaning as to exactly when the 'Collection Charge' stated in Defendant's debt collection would become due." *Id.*

"Under New York law, the initial interpretation of a contract is a matter of law for the court to decide. Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (quotations omitted); *accord, e.g.*, *W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("Whether or not a writing is ambiguous is a question of law to be resolved by the courts."). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993); *see also Breed v. Insurance Co. of North Am.*, 385 N.E.2d 1280, 1282-83 (N.Y. 1978) (noting that no ambiguity exists when contract language has "a definite and precise meaning" about which "there is no reasonable basis for a difference of opinion"). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Where the meaning of specific contract clauses is disputed, a court's task is to determine whether these clauses are ambiguous "when read in the context of the entire agreement" in order to "safeguard against adopting an interpretation that would render any individual provision superfluous." *Sayers*, 7 F.3d at 1095 (quotations omitted). "[U]nder New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003)

11

(quotations omitted). Moreover, "[u]nder New York Law, a specific provision will not be set aside in favor of a catchall clause. Definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary." *Delta Holdings v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1248-49 (2d Cir. 1991) (quotations omitted).

Applying these principles, the Court concludes that there is no ambiguity in the provisions of the MPN that Plaintiff refers to. Reading these clauses in the context of the entire agreement, the first provision is a general statement that if Plaintiff defaults, she will be obligated to pay "reasonable collection fees and costs." The second provision supplies greater specificity to this obligation, dictating that these fees and costs would "become immediately due and payable" upon default. The fact that the first, general provision did not provide the same specificity later outlined in the MPN does not create an ambiguity. Were the Court to read the MPN as Plaintiff urges, it would render superfluous the specific provision specifying that all fees are due and payable upon default—an outcome that New York courts have instructed to avoid. *Delta Holdings*, 945 F.2d at 1248-49. Accordingly, the Court concludes that there is no ambiguity in the terms of the MPN governing Plaintiff's student loan as to when collection charges would be assessed against her.

## IV. LEAVE TO AMEND

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). However, "where amendment would be futile, denial of leave to amend is proper." *Joblove v. Barr Labs., Inc.*, 466 F.3d 187, 220 (2d Cir. 2006). Amendments are futile if they "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir. 2002); *see also Joblove*, 466 F.3d at 220-21 (granting leave to amend is futile if it appears that the plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim).

As this Court has already determined, Pioneer's June 22, 2018 letter did not violate the FDCPA's prohibitions on the use of false, deceptive, or misleading representations or unfair or unconscionable means to collect on a debt because Plaintiff was required by the agreed-upon terms of her unambiguous MPN—as well as the HEA and applicable ED regulations—to pay "reasonable collection fees and costs" that would become "immediately due and payable" upon her default. There are no additional facts the Plaintiff could allege that could plausibly resuscitate her claims—no amendments will change the language of the MPN, or the HEA and ED regulations. The Court will therefore not grant Plaintiff leave to amend her complaint.

## V. CONCLUSION

Because Pioneer's collection letter does not contain any false, misleading, or deceptive representations, and because the MPN is not ambiguous, Defendant's motion to dismiss is GRANTED and Plaintiff's complaint is dismissed with prejudice.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 25.

The Clerk is Court is further directed to enter judgment in favor of Pioneer and close this case.

SO ORDERED.

Dated: December 11, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge